## In re WATSON.

*(Supreme Court, General Term, Second Department.  December 10, 1890.)*

1. WILLS—PROBATE—EVIDENCE.
　　A will, prepared by an attorney upon the personal instructions of the testator, was executed pursuant to previous appointment. A type-written copy of it was prepared, and was executed next day. The two copies were precisely alike, except in date, and were executed in due form. The testator afterwards told the attorney that he had destroyed the copy first executed. *Held*, in proceedings to revoke the probate of the copy last executed, that the proof was sufficient to sustain the probate.

2. SAME—TESTAMENTARY CAPACITY.
　　There was evidence that testator was in the habit of drinking, and was occasionally intoxicated, and that he was quite feeble; but there was nothing to show lack of memory or incapacity, and the testimony of the subscribing witnesses and others tended to show that, when the instrument was executed, he was perfectly sober, and had a full understanding of his affairs, and it established his entire sanity and freedom from restraint. *Held*, that the proof established testamentary capacity.

3. TESTAMENTARY POWERS—EXECUTION.
　　Testator, under the will of his father, was entitled during his life to the benefit of a trust fund, which, on his death, was to go to his children, if any, and, if he had no children, to such person as he should by will direct. He had no children, and by will gave all his property to his wife, except a few legacies, making no reference therein to the power of appointment. *Held*, that the trust fund passed to the wife, under the general bequest, as an execution of the power. Following *White* v. *Hicks*, 33 N. Y. 383.

Appeal from surrogate's court, Westchester county.

Petition of Francis A. Watson and Henry R. C. Watson for revocation of probate of the will of William Watson, the younger, deceased. From a decree confirming the probate, the petitioners appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*John E. Parsons* and *George C. Blanke,* for appellants. *Cornelius E. Kene,* for respondent.

BARNARD, P. J.　William Watson, the younger, died in Westchester county in September, 1887, leaving a last will and testament. The will was admitted to probate by the surrogate of Westchester county on the 23d of January, 1888. The deceased left no child or children, and by his will made his wife the residuary legatee of his estate. The petitioners, who are brothers of the deceased, ask that the probate be revoked for irregularities in the probate, and because the testator was not free and capable. The proof taken makes a very voluminous record. The will was drawn on the 27th of July, 1887, and executed on the 28th of July, 1887. Cornelius E. Kene, a capable and respectable attorney of this court, drew the will upon the personal instruction of the deceased. It was executed under the form which the statute prescribes for the validity of wills. The witnesses to it were Mr. Kene and a Mr. Peter Schleger. No one else was present. Mr. Kene was doing some business for testator, and on the Monday preceding the execution, and on two or three occasions prior thereto, he told Mr. Kene he wished to make a will. On this Monday, an appointment was made with Mr. Kene for the draft of a will on the Wednesday following. On Wednesday, a will was drawn in the testator's presence and executed. It was thought to be best to have a type-written copy made, which was done, and it was executed the next day, Thursday. The Thursday will is the one offered for probate. The two wills were precisely alike, except in date. The same witnesses signed both wills. The testator took away with him the written will when he executed the type-written copy. This was some six weeks before testator's death. Mr. Kene had no interview with him until two or three days before his death, when the testator told him that he had destroyed the written will of Wednesday, July 27th, when he went to the Coburn farm where he had

stopped on his way to his residence.  The testimony of Mr. Kene, beyond showing a person who was occasionally under the influence of intoxicating liquor, and was quite feeble, establishes a full understanding of his affairs, and entire sanity and freedom from restraint on the part of the deceased when the will was executed.  The other is equally direct and positive as to the capacity of testator.  This witness heard testator declare the will to be his last will and testament, and saw him sign it, and at his request was a witness.  He then had a conversation of some length with testator as to his travels in Europe.  He was perfectly sober, and there was nothing to show lack of memory, or any incapacity to execute a will.  Alfred Newton, the professional nurse, testifies to no incapacity.  In July and part of August, 1887, the testator could get in and out of a wagon, and was out about the farm the day before his death.  The witness testified that the deceased went to Mr. Kene's office in July, 1887, "perfectly sober."  The witness testified to a habit of drinking, but never saw him in such condition that he would call him "a drunken man."  Brainard T. Harrington, a witness who, for many years prior to his death, had means of observation greater than others outside of the family of deceased, establishes a perfectly capable testator.  When drunk, he would talk like a drunken man, and that was all.  The witnesses for petitioners (contestants) do not prove incapacity.  F. S. Ivins proves ill habits from drink.  He had conversation with deceased "when his mind was clear."  Moran had no acquaintance with deceased after 1883.  Carroll left the employment of deceased in 1884.  The witness Scofield was one who drank with deceased, and his testimony is not very definite as to times when he had conversations with deceased.  He proves nothing.  He states that the testator was drunk; "he was pleasant, joking, and full of fun."  Mr. Thompson, the gardener, shows merely a man who drank at times to excess, but "capable of transacting the business of the farm and of Homecroft generally, in his directions to me."  It is not necessary to go further with a minute statement of the evidence.  The will was fully proven both in formal essentials, and in the capacity and freedom from restraint of the testator.  By the ninth clause of the will of William Watson, Sr., a trust fund was created for the benefit of William Watson, Jr., during his life and after his death to his children, and on default of children "to such person or persons and in such manner or form as he shall by his last will and testament, executed after he shall attain the age of twenty-one years, limit or direct."  It is not easily apparent that the trust fund was any different from other individual property of William Watson, Jr.  It was part of his father's estate, with a life use in it with a remainder to his children if he had any, and, if there were no children, with a power to will it freely to whomsoever he would.  He had no children.  He was over 21 when he made the will, and he willed all his property to his wife, after giving a few legacies to others.  The subject of a reference to the disposition of property is thoroughly discussed in *White* v. *Hicks*, 33 N. Y. 383, where the conclusion is reached that a general bequest includes a personal estate which the testator had the power to appoint by will, and that the will will be held to execute such power where there is no contrary intention apparent from the will.  The decree should therefore be affirmed, with costs.